IN THE ~~DISTRICT/~~SUPERIOR COURT FOR THE STATE OF ALASKA
AT ANCHORAGE

Carl E. Brown
_____ )
Plaintiff(s), )
)
vs. )
)
Corrections Corp of America )
_____ )
Defendant(s). )
)

CASE NO. 3AN- 12-11140CI

SUMMONS AND
NOTICE TO BOTH PARTIES
OF JUDICIAL ASSIGNMENT

To Defendant: CCA (Anthony Grande, CEO) 10 Burton Hills Blvd Nash, Tenn 372L

You are hereby summoned and required to file with the court a written answer to the complaint
which accompanies this summons. Your answer must be filed with the court at 825 W. 4th Ave.,
Anchorage, Alaska 99501 within 20 days* after the day you receive this summons. In addition,
a copy of your answer must be sent to the plaintiff's attorney or plaintiff (if unrepresented)
Carl E. Brown _____ , whose address is: 3001 N. Juniper St
Hudson, Colo. 80642 _____

If you fail to file your answer within the required time, a default judgment may be entered
against you for the relief demanded in the complaint.

If you are not represented by an attorney, you must inform the court and all other parties in this
case, in writing, of your current mailing address and any future changes to your mailing address
and telephone number. You may use court form *Notice of Change of Address / Telephone
Number* (TF-955), available at the clerk's office or on the court system's website at
www.state.ak.us/courts/forms.htm , to inform the court. - OR - If you have an attorney, the
attorney must comply with Alaska R. Civ. P. 5(i).

NOTICE OF JUDICIAL ASSIGNMENT

TO: Plaintiff and Defendant

You are hereby given notice that:

[X] This case has been assigned to Superior Court Judge _Morse_
and Master _____

[ ] This case has been assigned to District Court Judge _____

CLERK OF COURT

11/27/12
_____
Date

By: _Keyana Gibb_
Deputy Clerk

I certify that on 11/28/12 a copy of this Summons was [X] mailed [ ] given to
[X] plaintiff [ ] plaintiff's counsel along with a copy of the
[ ] Domestic Relations Procedural Order [ ] Civil Pre-Trial Order
to serve on the defendant with the summons.
Deputy Clerk _K. Ellis_

* The State or a state officer or agency named as a defendant has 40 days to file its answer. If
you have been served with this summons outside the United States, you also have 40 days to file
your answer.

CIV-100 ANCH (10/05)(st.3)
SUMMONS

Exhibit A
Page 1 of 10 Pages

Civil Rules 4, 5, 12, 42(c), 55

2013 Jan 03 13:02 AM Alaska Court System Records 562502637af2

Carl E. Brown
Obs. #66096
HCF
3001 N. Juniper St.
Hudson, Colo. 80642

IN THE SUPERIOR COURT FOR THE STATE OF ALASKA

THIRD JUDICIAL DISTRICT AT ANCHORAGE

| | | |
|---|---|---|
| CARL E. BROWN as<br>Next friend of<br>JAMES E. CARTER,<br>        Plaintiff,<br><br>v.<br><br>CORRECTIONS CORP.<br>Of AMERICA,<br>        *Defendant.* | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | **CIVIL ACTION**<br><br>Case No. ~~3      ~~ CI<br>3AN-12-11140CI |

    **COMES NOW** Carl E. Brown as next friend of James E. Carter, the deceased and hereby brings this civil action against Corrections Corporations of America, hereafter CCA for Negligence, Breach of Contract and Wrongful Death to its legal conclusion.

**PARTIES**

    <u>Plaintiff:</u>

    James E. Carter, real party in interest and the deceased , was a prisoner of the state Alaska who, at the time a cause for action was accrued was housed in a facility in Hudson, Colo.; however, the chain of events that eventually led to Mr. Carter's death began while he was under the care of medical personnel while he was housed in a facility owned and operated by CCA in Eloy, Arizona known as Red Rock Corr. Ctr. (RRCC).

<u>CIVIL ACTION</u>
Brown, next friend of Carter
3AN-11-    CI
1 | P a g e

Exhibit A
Page 2 of 10 Pages

Plaintiff is a member of the Cleary Final Settlement Agreement Act which per *Rathke v. Corr.*

*Corp. of Am.*, 153 P.3d 303 (2007), makes Plaintiff a legal third-party beneficiary relevant to the above-captioned case.

Defendant:

CCA is a privately owned company which at the time Mr. Carter initially became ill was under contract with the Alaska Dept. of Corr., (DOC), to house Alaskan prisoners in an out-of-state facility in Eloy, Arizona. Among other things, CCA was contractually obligated to provide medical care as defined in section 4.14 of the Alaska Contract with CCA for prisoners subtitled Health Care Services; (Ex. A., pg. 42).

## JURISDICTION

The Alaska court system, by virtue of Plaintiff's standing and subject matter does have jurisdiction pursuant to AS 22.10.020 and Alaska Constitution Art. I section 1, over each of the parties because the AK DOC does have a contract with the defendant who is an agent of the state and matters concerning this contract are to be brought in Alaskan courts.

## PRELIMINARY STATEMENT

This is a civil action for compensatory and monetary relief brought pursuant to Alaska Constitution Art. I sections 1, 3 and 7. The text of the Alaska Constitutional provisions permits enforcement of rights.

## STATEMENT OF FACTS

1. Plaintiff reported to medical at RRCC complaining of painful and frequent urination. Medical personnel concluded that Plaintiff suffered from a urinary tract infection; (UTI). Plaintiff submitted urine samples on April 10 & 20 and May 2 & 11 for analysis, all of which were negative for UTI; (Ex. A., pp. 1-10).

2. From April of 2007 to February of 2008, Plaintiff was treated for UTI despite the fact that he did not respond to treatment and u/a's were negative for UTI.

**CIVIL ACTION**
Brown, next friend of Carter
3AN-11-     CI
2 | P a g e

3 .On 08/08/07, medical personnel ordered a referral to a urologist which was approved by Alaska; Plaintiff eventually saw a urologist on 10/03/07. Assessment was an inmate with persistent UTI and called for a complete work-up to include a CT-scan of the abd/pel area w/wo I.V. and p.o. contrast; (Ex. A., pp. 19-20).

4. On 10/12/07, a second appointment with urologist was ordered; apparently, findings from a blood analysis received on October 4, 2007 revealed elevated PSA levels. A subsequent sample submitted 10/23/07 confirmed that free PSA % was at 9% which indicate increased risk of cancer; (Ex. A., pp. 22-25).

5. Progress note dated 10/08/07 detailed prostate mass; (Ex, A/, pg, 23).

6 .Progress note dated 11/23/07 assessment mass prostatitis; (Ex. A./ pg. 26).

7. Second appointment with urologist 12/09/07 revealed CT-scan and other recommended tests were not conducted and was re-ordered to include a cystoscopy. Risk of procedure was discussed with Plaintiff; he understood and wished to proceed; (Ex. A., pg. 27).

8. On 12/20/07, request for CT-scan of abd/pel area w/wo contrast; reason, gross hematuria and on 01/09/08, CT^-scan of pelvis showed enlarged prostate and that kidneys were free of cysts, stones masses and hydronephrosis—no large lymph nodes were present in abdomen in the periaortic area; (Ex. A., pp. 28-29).

9. Progress note dated 02/28/08 states Plaintiff has history remarkable hematuria; upgrade urologist appt. from routine to urgent; biopsy revealed tumor; (Ex. A., pp. 30-31).

10 .On 03/13/08, plaintiff was seen by medical personnel who performed the cystoscopy and removed tissue for biopsy; found material to be suspicious for carcinoma and fulgurated tissue. It appears from preliminary report that no option was offered or discussed to fulguration; (Ex. A., pg. 32).

11. Progress note dated 08/03/08, Plaintiff first complaint of right flank pain in RQL and LLQ; stomach distended, rt. Side hurts and constipation; assessment: constipation; (Ex. A., pg. 33).

12. Urine sample received by Quest Diagnostics reported 08/06/08 comments sample received w/o preservative—evaluate with caution; (Ex. A., pg. 34).

13 .Progress note dated 08/11/08, Plaintiff complains of constipation, continuing rt, side pain aggravated by breathing-currently taking milk of magnesia; (Ex. A., pg. 37)

14. Second urine sample delivered w/o preservative; (Ex. A., pg. 36).

15. U/?A from Quest Diagnostics revealed elevated creatine level at 3.12; (Ex. A., pg. 37).

16. Progress note dated 08/12/08 assessment :acute renal failure;(Ex. A., pg. 38).

**CIVIL ACTION**
Brown, next friend of Carter
3AN-11-    CI
3 | P a g e

Exhibit _____
Page ____ of ____ Pages

17. Special procedures/Interventional radiography: The patient is a 53 year old male with a right side hydronephrosis demonstrated by abd/pel CT-scan on 08/18/08, reportedly secondary xo a bladder tumor which obscures the right ureteral orifice ...;(Ex. A., pg. 39).

18 .Final pathologic diagnosis indicates bladder and prostate chips showing invasive urothelial carcinoma, high grade, dated 08/17/08; (Ex. A., pg. 40).

19. Special procedures report dated 09/03/08 details placement of stent; (Ex. A., pg. 41).

20. Preliminary report dated 09/18/08 details spreading of cancer to the prostate gland; (Ex. A., pg. 47).

21. Ongoing treatment as cancer has invaded prostate. Consultation note from medical personnel dated 10/01/08; (Ex. A., pg. 53).

22. Preliminary report consultation note dated 10/09/08 further details difficulties Plaintiff has to endure; (Ex. A., pp. 54-55). 23. Further record of continuing treatment necessary due to initial onset of bladder cancer; (Ex. A., pp. 55-63).

## CAUSES FOR ACTION

Negligence:
Plaintiff contends Defendant was negligent in the care and treatment of Plaintiff's illness

including the fact that the Defendant:

1) Owed Plaintiff a duty of care;
2) Defendant breached that duty;
3) Plaintiff's injury and subsequent was proximately caused by the breach and
4) Actual loss or damage.

Duty:
CCA per contractual agreement owed Plaintiff a duty of care. Section 4.14 of the Alaska Contract

for Prisoners in CCA facilities specifically states;

"The contractor will be responsible to provide all on-site and to
Coordinate specialty, hospital and emergent necessary medical ..."
(Ex. A., pg. 42). This established Defendant's duty.

Breach:
In response to Plaintiff's complaints of frequent and painful urination, Medical staff at CCA

concluded that Plaintiff suffered from a UTI and treated Plaintiff accordingly. This treatment continued

for approximately 8 months; (Ex. A., pp. 1-26).

CIVIL ACTION
Brown, next friend of Carter
3AN-11-    CI
4 | P a g e

Even though all u/a's were negative for UTI, medical staff at CCA persisted in treating Plaintiff as if he had a UTI for 4 months, medical staff failed to explore other possible causes for Plaintiff's discomfort and condition. This delay in diagnosis allowed the actual condition to advance.

When u/s's continued to be negative for a UTI, medical staff should have implemented more comprehensive procedures to determine Plaintiff's actual condition or illness. To the exclusion of all else, medical staff persisted in doggedly pursuing a course of treatment that was clearly inappropriate and inconsistent with test results.

To establish Breach, Plaintiff must show that Defendant:

1) Failed to perform in accordance with any term or provision of the Contract;
2) Partially performed in accordance with any term or provision of the Contract; or,
3) Performed any act prohibited or restricted by the Contract; (Ex. A., pg. 46).

There can be no dispute that 11 months passed before Plaintiff was seen by medical personnel who attended to Plaintiff's actual condition; (see *Miller v. CCA*, 375 F. Supp. at 900) (for the proposition that passage of nearly a year was sufficient evidence to create a genuine issue of material fact as to whether Defendant Breached their duty to provide adequate and reasonable medical care).

<u>Proximate cause:</u>

Plaintiff does not claim that Defendant's conduct caused the underlying condition but that Defendant's conduct exacerbated Plaintiff's existing condition. Plaintiff does contend that had Defendant provided adequate and reasonable medical care and attention in a timely fashion, his condition would not have resulted in a chain of events that led to Plaintiff's eventual death.

On 03/13/08, medical personnel subcontracted by CCA performed a cystoscopy, removed tissue for biopsy and then fulgurated, (burned off by using electric current), the growth from which the material for biopsy was taken; (Ex, A./ pg. 32). The preliminary report dated the same day made no mention of any offer of alternative treatment to fulguration or even if there was an alternative.

As early as 02/28/08, Mr. Carter was aware the growth was suspicious for carcinoma and had two weeks to contemplate what course of action he wished to take if the growth did indeed prove to be carcinomatous and had in fact decided that if the growth was carcinomatous, complete bladder removal was the only sensible option and that reliance on an external synthetic bladder was acceptable.

Mr. Carter was never permitted to avail himself of the opportunity to choose, medical personnel made the choice for him by removing the carcinomatous lesions. Had Mr. Carter been afforded the luxury of choice, he would have opted for complete bladder removal and voiced his decision to do so. This option would have served to eliminate all other subsequent difficulties arising out of the fulguration of the

CIVIL ACTION
Brown, next friend of Carter
3AN-11-    CI
5 | P a g e

Exhibit _A_
Page _6_ of _10_ Pages

Case 3:13-cv-00001-SLG   Document 1-1   Filed 01/03/13   Page 6 of 10

lesions such as acute renal failure and loss of the function of a kidney, (Ex. A., pg. 380) and the cancer spreading to his prostate gland; (Ex. A., pg. 40).

Actual loss or damage:

Since this was an ongoing condition beginning as a bladder cancer whose aggressive treatment precipitated the loss of function of Plaintiff's right kidney and when the remaining kidney shut down, death was inevitable and directly traceable to the conduct of medical personnel subcontracted by defendant CCA.

The actual loss is the death of Mr. Carter and Plaintiff is seeking compensation consistent with whatever guidelines may be in place. Plaintiff is seeking punitive damages in the amount of $5,000,000.

## SECOND CAUSE FOR ACTION

Breach of contract:

Plaintiff's contends that Defendant's failure to:

1) Provide reasonable and adequate medical care;

2) Obtain Plaintiff's informed consent before treatment, non-routine exam or procedure; and,

3) Monitor all health care personnel rendering patient care constitute Breach

At the time Breach occurred, *Rathke*, 153 P.2d 303(2007), controlled as to whether Plaintiff is a legal third-party beneficiary. Via contract, Defendant was obliged to "... be responsible to provide all on-site and specialty necessary medical ... services ..." (Ex. A., pg. 42) and;

> "Except as set out below, no treatment, non-routine examination or procedure may be undertaken without first obtaining informed consent of the Prisoner. Informed consent is the agreement by the Prisoner to treatment, non-routine examination or procedure after being provided material facts regarding the nature, consequences, risks and *alternatives* concerning any proposed treatment, non-routine examination or procedure." (emphasis added).(Ex. A., pg. 43).

As to providing adequate and reasonable medical care, treatment for many months for a non-existent UTI, ( paras. 1-2), cannot be deemed adequate or reasonable, particularly so when the actual condition went undiagnosed and untreated for nearly a year, and the same amount of time passed before Plaintiff was seen by medical staff who accurately diagnosed Plaintiff's condition; (Ex. A., pg. 230) (see

**CIVIL ACTION**
Brown, next friend of Carter
3AN-11-    CI
6 | P a g e

Exhibit _____A_____
Page _____7_____ of _____10_____ Pages

*2013 3AN Juneau Alaska Court System Records 35728:6870...*

*Miller*, supra, at 900 for the proposition that delay in treatment that causes a condition to worsen supports a finding of Negligence),

As to the issue of informed consent, medical personnel was obliged to provide material facts regarding the "nature, consequences, risks and *alternatives*, (emphasis added), concerning any proposed non-routine examination or procedure." (Ex. A., pg.42).

The record is silent on the issue of alternative treatment. As early as 2/28/08, Plaintiff was aware that a cystoscopy revealed the presence of a tumor on his bladder at which time, a second cystoscopy was scheduled requesting "urology-cystoscopy-in or with biopsy;" (Ex. A., pg. 30). The second cystoscopy was performed after which tissue was removed for biopsy and then the cancerous tissue was removed. Risk of bleeding, infection and bladder was discussed; (Ex. A., pg. 32). At no time was Plaintiff apprised of any alternative treatment nor was any offered. In fact, Plaintiff was not even informed that the lesions were cancerous until after they had been removed and after he had come from under the effects of the anesthesia.

Obviously, Plaintiff could not have known for sure whether the lesions were indeed cancerous until after the biopsy was performed. But Plaintiff could have and should have been apprised of any and all alternative treatments or procedures and certainly the advantages and disadvantages of complete bladder removal as an alternative; (Ex. A., pg. 43).

The California Supreme Court held in *Cobbs v. Grant*, 8 Cal. 3d 229, 243(1972), that because Plaintiff's in general except for in rare cases, are unlearned in the medical sciences, it is incumbent upon the physician to provide the patient with the necessary information

> "to enable the patient to chart his course knowledgeably, reasonable familiarity with therapeutic alternatives and their hazards become essential. Therefore, we hold, as an integral part of the physician's overall obligation to the patient is a duty of reasonable disclosure of the available choices with respect to proposed therapy and of the dangers inherently and potentially involved in each."

Failure to provide Plaintiff with this information while obtaining consent could constitute failure by the physician to meet his due care duty to disclose pertinent information; normally an act of Negligence which constitutes Breach of Contract.

Further Breach occurred when the regional director failed to monitor the performance of all medical personnel rendering medical care. If consent was not given or Plaintiff was not fully informed, the regional director was duty-bound via contract to insure for the protection of Defendant and Plaintiff alike that every aspect of the procedure was conducted according to contractual obligation.

**CIVIL ACTION**
Brown, next friend of Carter
3AN-11-    CI
7 | P a g e

Exhibit *A*

Page *8* of *10* Pages

CCA was responsible to have its regional director involved to oversee and insure that medical care provided met with the standard set forth via contract in every was and at every step of the administration of medical care.

Even though medical care was subcontracted, CCA was responsible to insure that every aspect of the contractual agreement was honored. CCA's responsibility did not end at merely providing licensed medical care but to insure that the care provided met with every demand implied by contract.

Section 4.14 T., Subcontracts Concerning Prisoner Health states that "The contractor shall remain solely responsible for performance by any subcontractor under subcontract[s];" (Ex. A., pp. 44-45).

Section 3.35 B, defines "Breach" as:
1) Failure to perform in accordance with any term or provision of the Contract;
2) Partial performance of any term or provision of the contract; and
3) Any act prohibited or restricted by Contract.

CCA owed a duty of care to Plaintiff. A duty of care is contractual in nature and exists when the expression of the sum total of those considerations of the policy which lead the law to say that a particular plaintiff is entitled to protection. Via the contract between the Alaska DOC and CCA and Alaska's standing as guardian of Plaintiff, one or both owed that duty.

Plaintiff seeks compensatory damages in the amount fixed by contractual agreement. Plaintiff also seeks punitive damages in the amount of $5,000,000.00.

**PRAYER FOR RELIEF**

Plaintiff pray the court declare that Plaintiff has stated cause for which relief may be granted ; that acts or omissions by the defendant constitute Negligence and violate the terms of the contract between CCA and the AK DOC which imply Breach; that acts or omissions were blatant and the court find that this case is appropriate for trial.

Plaintiff further pray the court find that the punitive damage amount, $10,000,000.00 be considered and approved for the fact that over the years, CCA has been embroiled in numerous disputes involving medical care or lack thereof, as a deterrent to future conduct resulting in serious medical

CIVIL ACTION
Brown, next friend of Carter
3AN-11-    CI
8 | P a g e

Exhibit  A
Page  9  of  10  Pages

Complications, injury and death; see *Miller v. CCA*, 375 F. Supp. 396(2005); *Bowman v. CCA*, 1998 U.S. Dist. LEXIS 23399; *Martin v. CCA, U.S.*, 2006 U.S. Dist. LEXIS 5064; *Santo v. CCA*, 2008 U.S. Dist. LEXIS 70857; *Nobles v. CCA*, 327 Fed. Appx. 838(2009); *Alger v. CCA*, 2000 Tenn. App. LEXIS 627

It would appear that previous sanctions against CCA have not been severe enough to deter CCA from these acts or omissions that continue to occur in sufficient enough numbers to demonstrate that CCA has not improved its policy of medical administration to those under its care as is evinced by the growing number of cases against CCA.

## CONCLUSION

Plaintiff has shown Defendant to have been Negligent as to the duty established via contract to provide adequate and reasonable medical care. Plaintiff has shown that delay and unprofessional care and treatment of Plaintiff's condition exacerbated Plaintiff's condition and that actual loss, his death, is significant; and, failure to obtain Plaintiff's informed consent by not offering/ apprising Plaintiff of available alternatives to prescribed treatment require a finding that these acts or omissions did indeed result in Negligence.

Plaintiff has established that the contract between CCA and the AK DOC was Breached by the defendant by failing to:

1) Provide adequate and reasonable medical care;
2) Obtain Plaintiff's informed consent prior to performing any treatment, non-routine examination or procedure; and,
3) Failure to monitor all health care personnel's performance as required by contract.

For these reasons, Plaintiff pray the court find that a cause for which relief may be granted has been stated and declare that this case is appropriate for a jury trial.

Plaintiff respectfully submits this Civil Action this ____ day of December, 2011.

I certify that a copy of this Civil Action was mailed by me to the Superior Court clerk on 12/ /2012  09/20/2012
By: *Carl E. Brown*
   Carl E. Brown

By: *Carl E. Brown*
Carl E. Brown next friend of James E. Carter

**CIVIL ACTION**
Brown, next friend of Carter
3AN-11-    CI
9 | P a g e

Exhibit _A_
Page _10_ of _10_ Pages